ORIGINAL

SEALED
BY ORDER OF THE COURT

GLENN S. LEON
Chief
Fraud Section, Criminal Division
United States Department of Justice

CHRISTOPHER FENTON
MATTHEW REILLY
BLAKE GOEBEL
Trial Attorneys
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone:     (202) 320-0539
Email:         Christopher.Fenton@usdoj.gov
               Matthew.Reilly2@usdoj.gov
               Blake.Goebel@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 20 2022

at 3 o'clock and 15 min. P M
John A. Mannle, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA | CR. NO. **CR22 00093** JMS |
| v. | SEALED INDICTMENT |
| CURTISS E. JACKSON,  (01)<br>JAMEY DENISE JACKSON,  (02)<br><br>Defendants. | [18 U.S.C. §§ 1349, 1341, 1343, 2;<br>15 U.S.C. §§ 78j(b); 78ff; and 17<br>C.F.R. § 240.10b-5] |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment, unless otherwise stated:

1.    The defendant CURTISS E. JACKSON ("C. JACKSON") resided in the District of Hawaii and served in the roles of Chief Executive Officer, Chief Financial Officer, Corporate Secretary, and Chairman of the Board of Directors of a company called Semisub, Inc. ("Semisub"), which C. JACKSON had founded.

2.    The defendant JAMEY DENISE JACKSON ("D. JACKSON") resided in the District of Hawaii and served in the role of President of Semisub. D. JACKSON was married to C. JACKSON.

3.    In their respective capacities, the defendants controlled and directed all aspects of Semisub's business and operations, including the offering and sale of Semisub securities, use of funds raised from the sale of Semisub securities, and communication with actual and prospective purchasers of Semisub securities. The defendants also controlled Semisub's Bank of Hawaii and other bank accounts.

4.    Semisub was a Nevada corporation with its principal place of business in Honolulu, Hawaii. From its formation until at least in or around 2021, the defendants controlled Semisub. Semisub was formed in 2009 as a successor to a California corporation with the same name that had been founded by C. JACKSON in 2003. Semisub purportedly engaged in the business of developing, building, selling, and operating semisubmersible vessels.

5.    Semisub LLC (the "LLC") was organized in California with its principal place of business in Honolulu, Hawaii. The LLC was founded by C. JACKSON in 2003. The LLC was owned and controlled by the defendants. The LLC's stated purpose was to build Semisub's first vessel, named "Semisub One," as well as a fleet of additional vessels that Semisub would market and sell to customers worldwide.

2

6.     From a time unknown but no later than 2005, and continuing through at least in or around 2021, the defendants raised money from investors by selling securities, including common stock, preferred stock, and promissory notes issued by Semisub, as well as membership interests in the LLC.  In 2008, the Pennsylvania Securities Commission issued an order that prohibited Semisub and C. JACKSON from offering and selling securities in Pennsylvania.  In 2009, the California Department of Corporations determined that C. JACKSON had made, or caused to be made, material misrepresentations or omissions in connection with the offer or sale of securities and entered an order that prohibited Semisub and C. JACKSON from offering or selling securities in California.  The defendants nevertheless continued to sell securities, and to cause securities to be sold, to investors across the United States, including to investors in Pennsylvania and California in violation of both states' orders.  In total, to date, defendants have raised over $28 million from more than 400 investors.

<u>Overview of the Scheme to Defraud Investors</u>

7.     From a time unknown but no later than 2008, and continuing through at least in or around 2021, the defendants, C. JACKSON and D. JACKSON, together with others known and unknown to the Grand Jury, on the island of Oʻahu, within the District of Hawaii, and elsewhere, engaged in a fraudulent scheme to obtain money and property by deceiving purchasers of Semisub securities about Semisub's business and operations, including Semisub's revenue and expenses.

<u>Purpose of the Scheme to Defraud</u>

8.     The purpose of the scheme was for the defendants, C. JACKSON and D. JACKSON, to enrich themselves by: (i) making materially false and misleading statements to investors relating to Semisub's business and operations, including Semisub's revenue and expenses; (ii) concealing from investors the true facts; (iii) diverting the proceeds of the scheme

3

for their personal use and benefit; and (iv) concealing the scheme from regulators, law enforcement, and investors.

Manner and Means of the Scheme to Defraud

9.      To induce investors to purchase Semisub securities, the defendants, C. JACKSON and D. JACKSON, made, and caused to be made, numerous materially false and misleading statements about Semisub to investors.  These false and misleading statements were made by the defendants in: (i) direct exchanges with investors over the telephone in one-on-one conversations and conference calls; and (ii) written materials that the defendants authored, reviewed, approved, issued, and distributed directly via the mails and Internet, and indirectly through telemarketers who sold Semisub stock via telephone and e-mail at the defendants' direction in exchange for sales-based commission.  The written materials containing the false and misleading statements included offering documents, executive summaries of offering documents, investor updates, and emails.  The defendants instructed investors to mail payments for Semisub securities to Semisub at Semisub's offices in Honolulu, Hawaii, or to wire payments directly into Semisub's Bank of Hawaii accounts, which the defendants controlled.

***Defendants' Materially False and Misleading Statements and Omissions About
the Use of Funds Raised by Selling Semisub Securities***

10.      The defendants falsely represented to investors that Semisub had used, and would continue to use, the funds it raised by selling securities principally to make loans to the LLC to complete construction (and begin subsequent operation) of Semisub One and to build a fleet of additional vessels, and that the LLC had agreed to pay Semisub 10 percent annual interest.  The defendants further misrepresented to investors that the LLC would repay all outstanding principal and accrued interest on the loans made to the LLC by Semisub before the LLC made any distributions to its members (namely, the defendants).  At various times, the defendants made

4

specific false statements about the amount of proceeds that Semisub had purportedly loaned to the LLC.

11.     In truth and in fact, the defendants knew the proceeds raised from the sale of Semisub securities had not been used, and would not be used, as described by the defendants to investors. Semisub did not make loans to the LLC, the LLC did not pay any interest to Semisub, and the defendants did not wait until the LLC had repaid Semisub in full to take distributions for themselves. Rather, the defendants deposited the proceeds into Semisub's Bank of Hawaii and other bank accounts and used a substantial portion for their own personal benefit, including to pay for luxury residences in California and Hawaii, a Mercedes-Benz automobile, luxury vacations, a wedding, psychics, marijuana, personal credit card bills, and cash withdrawals for their personal use, among other things.

12.     The defendants concealed from investors material information about the anticipated and actual use of proceeds from the sale of Semisub securities, including the fact that the defendants were using a substantial portion of the proceeds for their own personal benefit. For example, the defendants refused to provide historical financial information to investors who inquired about Semisub's financial condition or otherwise asked the defendants to provide an accounting of how investor money was being spent. Such omissions made materially misleading the defendants' statements about how they used and anticipated using the proceeds and that they would receive distributions only when Semisub was repaid its interest and principal by the LLC.

13.     To the extent that the defendants provided any financial information to investors, it was limited to *pro formas* describing expected future operating costs and profits. However, the *pro formas* were materially misleading by omitting any reference to the defendants' ongoing use of investor money for the defendants' own personal benefit. For example, *pro formas* sent to

investors during the relevant time period purported to present Semisub's expenses but did not include the amounts the defendants spent on themselves

14.     To avoid being held responsible for defrauding investors and stealing their money, in or around 2019, the defendants falsely told investors it would be in the investors' and Semisub's best interests if the investors signed agreements: (i) canceling the "large debt" the LLC purportedly owed to Semisub as a result of the loans described above; and (ii) releasing the defendants from any liability and holding them harmless for any past acts which may make the defendants party to a civil or criminal proceeding.  According to an update that the defendants emailed to investors on or about August 20, 2019, canceling the debt would give the Semisub and the LLC "[c]lean financials [which] make it easier to engage in joint ventures with other partners[,]" and the hold harmless and release agreements were "necessary to have on record so that the LLC and [Semisub] can approach potential joint ventures, venture capitalists, and lenders in order to scale up the profitability and world-wide reach of the LLC and [Semisub]."

15.     The statements in paragraph 14 were materially misleading because the defendants failed to disclose that Semisub had not made any loans to the LLC, that the defendants had used a substantial portion of the funds raised by selling Semisub securities for their own personal benefit, and that the defendants had asked the investors to sign the agreements out of concern for the defendants' own self-interest and not for the benefit of the investors.

***Defendants' Materially False and Misleading Statements About the Completion of Semisub's First Vessel***

16.     Since at least in or around 2009, the defendants repeatedly made materially false and misleading statements to investors representing that Semisub One was mere weeks or months away from beginning operations.  For example, in an offering document dated December 30, 2009, the defendants falsely claimed that Semisub One was approximately 90% built and that Semisub

6

only needed two more months and $500,000 more in investor funds to complete construction and sea trials, and obtain the Certificate of Inspection (or "COI") from the U.S. Coast Guard required for Semisub One to begin operating sightseeing tours that could potentially generate revenue.

17.     In truth and in fact, Semisub One was not two months away from beginning operations and generating revenue, and the defendants continued to raise money well in excess of the $500,000 they had claimed they needed to complete the vessel and misused a substantial portion of those investor funds for their own personal benefit.

18.     Over the next ten years, to perpetuate the fraud and support their lavish lifestyle, the defendants repeatedly misled investors about Semisub One's status, routinely telling investors that Coast Guard certification was weeks or months away and soliciting more funds from investors to help Semisub meet its new timetables.  The defendants knew these statements were false and misleading because the information that had been communicated to them by the Coast Guard said otherwise.  The defendants used these false and misleading statements to repeatedly approach (or "reload") individuals who had already invested in Semisub with the false promise that by investing more of their money, these individuals could help avoid a loss on their initial investments and earn an even greater rate of return.

19.     For example, on August 23, 2018, the defendants emailed an update to investors falsely stating: "We intend to have a soft opening within the next three weeks and will schedule a celebration and grand opening approximately 30 days after that."  The defendants knew this statement was false and misleading because the timetable the Coast Guard provided to the defendants was different than the timetable the defendants presented to investors. On August 15, 2018, the Coast Guard had notified C. JACKSON that it hoped to begin its review of Semisub One's electrical drawings on August 17, 2018, and would have 30 days to review the submission.

If the Coast Guard approved the drawings, then Semisub still would need to have the electrical system physically inspected and approved by the local Coast Guard office.

20.     On November 13, 2018, the defendants emailed another update to investors falsely stating: "I am happy to let you know that Semisub One is completed.  We intend to put Semisub One into operations by the end of this month at Aloha Tower."

21.     The defendants knew these statements were materially false and misleading because the Coast Guard had not certified Semisub One and the vessel could not begin operations by November 30, 2018.  On October 29, 2018, just two weeks before sending the November 13, 2018 investor update, the defendants received a letter from the Coast Guard Officer in Charge of Marine Inspection in Honolulu denying Semisub's then-latest request for an inspection because Semisub had failed to meet Coast Guard requirements on dozens of occasions:

> Prior to my inspectors attending your vessel, I am requiring that you provide written attestation from a licensed Professional Engineer verifying that the vessel is built and all systems installed in accordance with U.S. Coast Guard approved plans. Since June 2017, marine inspectors have attended your vessel 38 times for vessel plan verification. Each time the inspectors provided a detailed list of discrepancies found on the vessel. Further, numerous visits to the vessel highlighted that local installations on the vessel did not match U.S. Coast Guard approved plans. As recent as October 9, 2018, inspectors from my office attended your vessel and provided you with a list of discrepancies regarding the AC/DC electrical installation on board the vessel. Marine inspectors found the local installation did not match the recently revised drawings approved by the U.S. Coast Guard Marine Safety Center.

The defendants did not disclose to investors the October 29, 2018 Coast Guard letter.

22.     In the two weeks following the defendants' materially false and misleading November 13, 2018 update email to investors, the defendants scheduled investor conference calls and sent a further update email in which they made a limited-time offer to existing investors to purchase additional shares of Semisub securities at a fraction of the price the defendants purportedly planned to charge new investors as part of a subsequent new offering.

***Defendants' Materially False and Misleading Statements About the Construction and Sale of Semisub's Fleet of Additional Vessels***

23.     To further perpetuate the fraud and support their lavish lifestyle, the defendants repeatedly made materially false and misleading statements about the construction and sale of Semisub's purported fleet of additional vehicles, which the defendants referred to as "Semisub Two through Semisub Thirty +." The defendants misrepresented the progress Semisub had purportedly made working with Viking Systems, Inc., a structural engineering firm, telling investors that the production model was nearly complete and that the additional vessels could be built within a matter of months. The defendants also misrepresented that Semisub had relationships with, and in some instances had entered into agreements to sell vessels to marquee customers, like the United States Department of Homeland Security ("DHS"), the National Parks Service's Pearl Harbor National Memorial ("Pearl Harbor"), and the University of Hawaii's Marine Biology Department. The defendants also falsely stated that Semisub had developed relationships with deep-pocketed private equity firms, like BlackRock, Inc. ("BlackRock"), that the defendants claimed were actively helping to support and partner with Semisub to grow its business. The defendants told investors that the sale of these additional vessels would result in a profit of $25.5 million per vessel, making the sales Semisub's primary source of future revenue.

24.     For example, on June 9, 2017, the defendants emailed an update to investors falsely stating:

> We are working with Viking, our engineering firm, to complete the new production model of Semisub Two through Semisub Thirty +. There will only be some slight structural changes done. All other systems will stay the same. With the twenty plus approved systems on the vessel, we will only need one additional new approval from Washington DC which is structural only. This should take approximately 30 days. We are also working on a vessel for Marine Biology and Homeland.

25.     On November 13, 2018, the defendants emailed an update to investors falsely

stating:

> I intend to return to my home in Southern California and on to Viking in DC to review the new drawings of the production vessel. The only changes to the vessel will be the size, they will be ten feet longer and ten wider and we will be installing foils in the center of the hull for lift, (there will only be one approval needed from Coastguard Washington DC. that takes 30 days) these changes will make it easier to get up on plane and will give us better stability (better ride / faster). We intend to do all seven locations in the USA at a sale price of $32 million USD each. (cost to us is $6.5 million to manufacture, our net upfront is $10.5 mil. The return on investment to fund 30 months at 65% booked) with a private equity fund, like Black Rock. They have eight to ten divisions that meet our requirements. These will be all joint ventures, we will operate and split the profits, to accomplish this, we will have the new plans 100% approved and built 100% to plans. We will be marketing the new vessels world-wide.

26.    On April 4, 2019, C. JACKSON held a conference call during which he misrepresented to investors that one of the new additional vessels was "85% complete" and that BlackRock was entering into a joint venture with Semisub.

27.    The defendants knew all of these statements were materially false and misleading. Semisub's purported fleet was nothing more than idea, Semisub did not have a relationship with or agreement to sell vessels to DHS, Pearl Harbor, or the University of Hawaii, and Semisub did not have a relationship with BlackRock.

### *Defendants' Materially False and Misleading Statements About the Hawaii State Governor's Support and Endorsement of Semisub*

28.    In furtherance of the scheme, the defendants falsely claimed they had a close relationship with Hawaii Governor David Ige, and that he was a large supporter of Semisub and had endorsed the company. For example, on May 11, 2018, the defendants emailed an update to investors, in which C. JACKSON falsely stated: "Just finished a 20 minute phone call with Governor Ige, the present seated Governor of Hawaii. Denise and I worked on his last campaign and we were not only invited to his inaugural ball but seated at the table next to him. I made him

aware of our situation. He has been a large supporter of Semisub and is eager to see us start operations and come out for our inaugural sail."

29.     The defendants knew the statements in paragraph 28 were false because Governor Ige did not know the defendants or Semisub, and Governor Ige had not taken any steps to support or endorse Semisub.

### *Defendants' Attempt to Conceal the Scheme to Defraud by Misleading the Hawaii Securities Enforcement Board*

30.     In or around 2017, the Hawaii Securities Enforcement Board ("SEB") opened an investigation into the offering and sale of securities by Semisub and the LLC.

31.     An SEB investigator spoke with C. JACKSON in 2017 and 2018 in connection with the investigation.  C. JACKSON falsely told the SEC investigator that, among other things: (i) Semisub was no longer selling securities and had not sold any securities since around 2010 or 2011; (ii) the money raised from investors was spent on Semisub One, with the exception of a small "per diem" paid to Curtiss and Denise; and (iii) Semisub never sold securities to any investors residing in Pennsylvania.  Defendant C. JACKSON knew that all of these statements were false because Semisub had continued to sell securities up to and after the dates on which he spoke with the SEB investigator; a substantial portion of the funds raised by selling Semisub securities was used by C. JACKSON and D. JACKSON to support their lavish lifestyle; and Semisub sold securities to investors residing in Pennsylvania (and elsewhere).  C. JACKSON also attempted to deceive the SEB investigator into closing the matter by falsely claiming that BlackRock was entering into a joint venture with Semisub to build and sell vessels around the world and that if the SEB did not close its investigation, it would jeopardize the deal and harm Semisub's investors.

32.     The same SEB investigator also spoke with D. JACKSON in 2018 and 2019 in connection with the investigation.  D. JACKSON falsely told the SEB investigator that, among other things,   (i) Semisub One had been approved by the Coast Guard; (ii) Semisub was working to manufacture additional vessels to sell for $35 million each; and (iii) C. JACKSON and D. JACKSON had borrowed $6 million from the company and planned to pay it back as soon as Semisub One began operations.  Defendant D. JACKSON knew that all of these statements were false because Semisub had not obtained a COI from the Coast Guard; Semisub had not taken any material steps toward manufacturing additional vessels to sell; and C. JACKSON and D. JACKSON had not borrowed $6 million from the company.  To the contrary, C. JACKSON and D. JACKSON had been personally enriching themselves at the investors' expense and had no intention or means to repay the large amount of money they had stolen.  Like C. JACKSON, D. JACKSON also pressured the SEB investigator to close the investigation as soon as possible.  However, D. JACKSON told the SEB investigator a different false story, namely that the SEB investigation was preventing Semisub from carrying out its plans to do an initial public offering and raise money from new investors.

<u>COUNT ONE</u>

(15 U.S.C. §§ 78j(b); 78ff; 17 C.F.R. § 240.10b-5 – Securities Fraud)

33.     Paragraphs 1 through 32 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

34.     From a time unknown but no later than 2008, and continuing through at least in or around 2021, on the island of Oʻahu, within the District of Hawaii, and elsewhere, the defendants,

CURTISS E. JACKSON

and

JAMEY DENISE JACKSON

did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase and sale of securities, use and employ, and cause others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging, and causing others to engage, in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit: CURTISS E. JACKSON and JAMEY DENISE JACKSON made materially false and misleading statements relating to Semisub's business and operations, including Semisub's revenue and expenses, in connection with the sale of Semisub securities.

All in violation of Title 15, United States Code, Sections 78j and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

<u>COUNT TWO</u>
(18 U.S.C. § 1349 - Conspiracy to Commit Mail Fraud and Wire Fraud)

35.    Paragraphs 1 through 32 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

36.    From a time unknown but no later than 2008, and continuing through at least in or around 2021, on the island of Oʻahu, within the District of Hawaii, and elsewhere, the defendants,

CURTISS E. JACKSON

and

JAMEY DENISE JACKSON

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with other individuals, known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

    a.    mail fraud, that is, to knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, place and cause to be placed in a Post Office or authorized depository for mail a thing to be sent and delivered by the Postal Service or any private or commercial interstate carrier, for the purpose of executing such scheme and artifice, specifically mailings relating to the offering and sale of Semisub, Inc. securities, in violation of Title 18, United States Code, Section 1341; and

    b.    wire fraud, that is, to knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and

promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, specifically telephonic and email communications sent to and from actual and prospective purchasers of Semisub securities relating to the offer and sale of Semisub securities, and wire transfers from investors to Semisub,  in violation of Title 18, United States Code, Section 1343.

Purpose of the Conspiracy

37.    Paragraph 8 of this Indictment is realleged and incorporated by reference as though fully set forth herein.

Manner and Means of the Conspiracy

38.    Paragraphs 9 through 32 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS THREE THROUGH FIVE
### (18 U.S.C. § 1341 - Mail Fraud)

39.     Paragraphs 1 through 32 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

40.     From a time unknown but no later than 2008, and continuing through at least in or around 2021, on the island of Oʻahu, within the District of Hawaii, and elsewhere, the defendants,

### CURTISS E. JACKSON

and

### JAMEY DENISE JACKSON

together with their co-conspirators, known and unknown to the Grand Jury, did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, place and cause to be placed in a Post Office or authorized depository for mail a thing to be sent and delivered by the Postal Service or any private or commercial interstate carrier, for the purpose of executing such scheme and artifice.

### Purpose

41.     Paragraph 8 of this Indictment is realleged and incorporated by reference as though fully set forth herein.

### Scheme and Artifice to Defraud

42.     The Grand Jury realleges and incorporates by reference paragraphs 9 through 32 of this Indictment as a description of the scheme and artifice to defraud.

### Use of Mails

43.     On or about the dates specified as to each count below, the defendants,

16

CURTISS E. JACKSON

and

JAMEY DENISE JACKSON

on the island of Oʻahu, within the District of Hawaii, and elsewhere, for the purpose of executing

the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly place and

cause to be placed in a Post Office or authorized depository for mail a thing to be sent and delivered

by the Postal Service or any private or commercial interstate carrier:

| Count | On or About Date | Description of Mailing |
|-------|------------------|------------------------|
| 3 | May 25, 2018 | F.T. sent from outside the state of Hawaii, via FedEx, a check to purchase Semisub securities to Semisub in the state of Hawaii |
| 4 | August 1, 2019 | K.F. sent from outside the state of Hawaii, via FedEx, a check to purchase Semisub securities to Semisub in the state of Hawaii |
| 5 | November 25, 2019 | D.M. sent from outside the state of Hawaii, via FedEx, a subscription agreement to purchase Semisub securities to Semisub in the state of Hawaii |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS SIX THROUGH EIGHT
(18 U.S.C. § 1343 - Wire Fraud)

44.      Paragraphs 1 through 32 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

45.      From a time unknown but no later than 2008, and continuing through at least in or around 2021, on the island of Oʻahu, within the District of Hawaii, and elsewhere, the defendants,

CURTISS E. JACKSON

and

JAMEY DENISE JACKSON

together with their co-conspirators, known and unknown to the Grand Jury, did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose

46.      Paragraph 8 of this Indictment is realleged and incorporated by reference as though fully set forth herein.

### Scheme and Artifice to Defraud

47.      The Grand Jury realleges and incorporates by reference paragraphs 9 through 32 of this Indictment as a description of the scheme and artifice to defraud.

### Use of Wires

48.      On or about the dates specified as to each count below, the defendants,

18

CURTISS E. JACKSON

and

JAMEY DENISE JACKSON

on the island of Oʻahu, within the District of Hawaii, and elsewhere, together with their co-conspirators, both known and unknown to the Grand Jury, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce:

| Count | Approximate Date | Description of Interstate Wire |
|-------|------------------|-------------------------------|
| 6 | May 11, 2018 | Investor update email sent from Hawaii to investors outside Hawaii, among others. |
| 7 | November 13, 2018 | Investor update email sent from Hawaii to investors outside Hawaii, among others. |
| 8 | April 4, 2019 | Teleconference initiated from Hawaii to investors outside Hawaii, among others. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE NOTICE

1.  The allegations contained in all paragraphs of Counts One through Eight of this Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.  The United States hereby gives notice to the defendants charged in Counts One through Eight of this Indictment that, upon conviction of one or more of the offenses charged in those counts, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 1341, 1343, 1349, Title 15, United States Code, Sections 78j and 78ff, Title 17, and Code of Federal Regulations, Section 240.10b-5, alleged in Counts One through Eight of this Indictment, including but not limited to the following:

       a.      A sum of money equal to at least $28,812,320.66 in United States currency;

       b.      The semisubmersible vessel known as Semisub One;

       c.      All funds in the Central Pacific Bank Account in the name of SemiSub Inc. ending in 1930; and

       d.      All right, title, and interest, including all appurtenances and improvements thereon, in the real property known as 4182 6th Ct. Lantana, FL 33462.

3.  If by any act or omission of the defendant, any of the property subject to forfeiture described in paragraph 2 herein:

       a.  cannot be located upon the exercise of due diligence;

       b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty, the United States of America will be entitled to the forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

    DATED:  October 20, 2022, at Honolulu, Hawaii.


A TRUE BILL


*/s/ Foreperson*

_____
FOREPERSON, GRAND JURY


_____
CHRISTOPHER FENTON
MATTHEW REILLY
BLAKE GOEBEL
Trial Attorneys
Fraud Section, Criminal Division
United States Department of Justice